**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name: 13a0923n.06**

**No. 11-2040**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Nov 01, 2013
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| EDWARD F. LINT, | ) | |
| | ) | |
| | ) | ON APPEAL FROM THE |
| Petitioner-Appellant | ) | UNITED STATES DISTRICT COURT |
| | ) | FOR THE EASTERN |
| v. | ) | DISTRICT OF MICHIGAN |
| | ) | |
| JOHN PRELESNIK, | ) | |
| | ) | **OPINION** |
| Respondent-Appellee. | ) | |
| | ) | |
| _____ | ) | |

**Before:  ROGERS and COOK, Circuit Judges; VAN TATENHOVE,*** **District Judge.**

**GREGORY F. VAN TATENHOVE, District Judge.**  A Macomb County Circuit Court jury found Edward Lint guilty of, among other things, kidnapping his wife, Maja Lint.  After nearly a decade of challenging this conviction in state court, Lint petitions this court for a writ of habeas corpus, claiming that it is he who is now being unlawfully detained.  Specifically, he argues that he was confined without the effective assistance of counsel because his attorney did not properly investigate certain evidence, object to improper jury instructions, or communicate an advantageous plea offer to him.  The district court declined to hold an evidentiary hearing or issue the writ, but did

---

*The Honorable Gregory F. Van Tatenhove, United States District Judge for the Eastern District of Kentucky, sitting by designation.

grant a certificate of appealability as to these issues, and Lint appealed to this court. For the reasons that follow, the district court's decision will be AFFIRMED.

**I**

The honeymoon did not last long for Maja and Edward Lint. Shortly after midnight on November 10, 2003, less than two months after their marriage, Maja told her new husband that she was leaving him. Edward Lint begged her not to go, but when she insisted, he resorted to more coercive measures to ensure his wife would stay. According to Maja, her husband burned her green card, tackled her to the floor, tied her up with utility straps, forced a sock in her mouth, and threatened to kill her. After restraining her, he sprayed PAM cooking spray on the floor and walls, and then ignited some in the air as a demonstration that it would start a fire. Though Lint briefly released Maja for purposes of sexual intercourse and to accompany him to the store, he restrained her again upon returning home. When she tried to escape her bonds, Lint strengthened them and undertook additional measures to ensure she would not try to escape, such as hanging a hot iron over her head and tethering her to a television, which he claimed would fall on her if she were to move.

According to Maja, Lint released her when he observed a police car drive through the neighborhood and believed the police might see him because there were no blinds on the windows. At that point, Lint cleaned up the apartment, hid the utility straps in the laundry room, and kept Maja near him, threatening to kill her if she moved. Around 8:00 a.m. the next day, Maja's brother called. Lint informed him that Maja had left and that he did not know where she went. After taking the call, Lint fell asleep, and Maja, who was now unrestrained and awake, took the opportunity to escape. She went to a gas station and called the police. She reported that she had not previously attempted to call the police because she did not have a cell phone in her possession and Lint had "cut off" the phone line.

2

Lint was charged with Kidnapping in violation of MICH. COMP. LAWS § 750.349; two counts of First-Degree Criminal Sexual Conduct in violation of MICH. COMP. LAWS §750.520b(1)(f); and Malicious Destruction of Personal Property with a value of between $1,000 and $20,000 in violation of MICH. COMP. LAWS §750.337a(1)(b)(i). Over the course of the preliminary hearing and ensuing trial, Lint was represented by counsel James Hoare. According to the affidavits provided by Lint and his parents, Hoare received a plea offer from the government, but rejected the offer without communicating it to Lint. Thus, the case proceeded to trial.

At the conclusion of the government's case, which included testimony from Maja Lint, Hoare called Lint's Sister, Amanda Lint, and his cousin, Christy Dickenson. Because Hoare had not filed timely notice of using an alibi defense, he was limited to using testimony of these witnesses for the purposes of rebuttal and impeachment. By affidavit, Lint's parents and other sister, Jessica Lint, claim that they had other important information about the case, including testimony concerning the apartment's telephone line and window blinds, that could have impeached Maja's testimony. Jessica even claims to have contacted Hoare to inform him of this fact, but none of them were called to testify. In addition, Lint also claims that Hoare failed to properly introduce evidence of phone records and a police report.

In 2004, a Macomb County jury, which had been instructed on, among other crimes, a theory of secret kidnapping, found Lint guilty of kidnapping and malicious destruction of property, but acquitted him of the criminal sexual conduct charges. Lint was sentenced to 210 months to 40 years on the kidnapping conviction and 40-60 months on the malicious destruction of property conviction.

Lint filed a direct appeal in the Michigan Court of Appeals, where he raised, among other issues, his contentions that he received ineffective assistance of counsel because of his trial attorney's failure to investigate various testimonial and documentary evidence, as well as his trial counsel's failure to object to the jury instructions on secret kidnapping. The Michigan Court of Appeals affirmed Lint's conviction in a reasoned opinion, and the Michigan Supreme Court summarily denied his appeal.

Lint then collaterally attacked his conviction in state court, filing a motion for relief in the trial court. In this motion, Lint again raised his claim for ineffective assistance of counsel based on failure to pursue certain testimonial or documentary evidence. Lint also included an argument for ineffective assistance of counsel related to his trial counsel's failure to inform him of a plea deal offered by the government. The Macomb County Circuit Court denied Lint's motion for relief in an opinion that detailed its justifications for doing so. Both the Michigan Court of Appeals and the Michigan Supreme Court denied Lint's motion for leave to appeal "because the defendant has failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Lint,* No. 281800 (Mich.Ct.App. Apr. 8, 2008); *People v. Lint*, 769 N.W.2d 211 (Mich. 2008).

Having found no success in the Michigan state courts, Lint filed a petition for writ of habeas corpus in the Federal District Court of the Eastern District of Michigan, raising several of the claims he had previously asserted in state court. The District Court denied Lint's petition without an evidentiary hearing, but did grant a limited certificate of appealability. Lint now appeals to this court for yet another review.

4

**II**

**A**

This court applies *de novo* review to a district court's legal conclusions and the legal aspect of its rulings on mixed questions of law and fact in a habeas corpus proceeding. *Jalowiec v. Bradshaw*, 657 F.3d 293, 301 (6th Cir. 2011). However, under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214, this court's review of a state court decision affirming the conviction of a habeas petitioner is "highly deferential." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1391-92 (2011) (quoting *Woodford v. Visciotti,* 537 U.S. 19, 24 (2002) (*per curiam*)). State court findings of fact shall be "presumed to be correct," and the petitioner has the burden of overcoming that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

When a habeas claim has been adjudicated on the merits in state court, the AEDPA prohibits federal reviewing courts from granting the habeas petition unless the state court decision:

> (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A state court decision is contrary to clearly established federal law when a state court arrives at a conclusion opposite of that reached by the Supreme Court on a question of law or on indistinguishable facts. *Williams v. Taylor,* 529 U.S. 362, 412–13 (2000). Unreasonable application of clearly established federal law occurs when "the state court identifies the correct legal principle from [the Supreme] Court's decision but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. In terms of application, the Supreme Court has stated that, "[i]f

5

this standard is difficult to meet, that is because it was meant to be." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011). Under the AEDPA, the federal reviewing courts are empowered with authority to "issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents." *Id*. In this way, the writ of habeas corpus operates as a "'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id*. (citing *Jackson v. Virginia,* 443 U.S. 307, 332, n. 5 (1979) (Stevens, J., concurring in judgment)).

**B**

All three of Lint's claims reaching this court assert ineffective assistance of counsel. Accordingly, "[t]here is no dispute that the clearly established federal law here is *Strickland v. Washington* [,466 U.S. 668 (1984)]." *Pinholster*, 131 S. Ct. at 1403. In *Strickland*, the Supreme Court articulated a two-component test that must be satisfied for a defendant to demonstrate that a counsel's performance was so defective as to require reversal of a conviction: "[f]irst, the defendant must show that counsel's performance was deficient" and "[s]econd, the defendant must show that the deficient performance prejudiced the defense." *Id*. at 687.

For a defendant to satisfy the deficient performance component of the standard, he must show that "counsel's representation fell below the objective standard of reasonableness." *Id*. at 688. However, "[j]udicial scrutiny of counsel's performance must be highly deferential," and the court must apply a "strong presumption" that the counsel's representation was within the "wide range" of reasonable professional assistance. *Id*. at 689. To establish the prejudice component, a defendant must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability

6

sufficient to undermine confidence in the outcome." *Id*. at 694. This likelihood of a different result "must be substantial, not just conceivable." *Richter*, 131 S. Ct. at 792.

In application, the Supreme Court has noted that, "[s]urmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky,* 559 U.S. 356, 371 (2010). The difficulty of this challenge is intensified when a petitioner is attempting to establish that a state court's application of *Strickland* was unreasonable under the AEDPA. "The standards created by *Strickland* and §2254(d) are both highly deferential…and when the two apply in tandem, review is doubly so." *Richter*, 131 S. Ct., at 788 (internal citations and quotation marks omitted).

**1**

First, Lint claims that his counsel was ineffective under the *Strickland* standard for failing to investigate and present potential testimonial and evidentiary sources.[1] Specifically, Lint argues that the introduction of phone records would have provided evidence that Maja was not held in secrecy, and would have impeached her testimony that she never made a call during the confinement. Lint also indicates that his parents and sister had important information that could have impeached Maja's testimony about the landline telephone cord and the blinds on the house, but that his attorney failed to investigate these matters. Finally, he asserts that his counsel failed to introduce a police report that he claims would have impeached certain testimony of Maja's.

---

[1]The State argues that Lint first presented this claim, as well as his claim for ineffective assistance of counsel for failure to communicate the plea deal, during his motion for relief from judgment, despite a state law that requires defendants to present claims in their direct appeal. However, whether or not Lint actually ran afoul of any state procedural laws, none of the courts that have engaged in a reasoned review of his claims has enforced such a rule against him. Thus, this claim may not be considered procedurally defaulted. *See Taylor v. McKee*, 649 F.3d 446, 450 (6th Cir. 2011) (quoting *Willis v. Smith,* 351 F.3d 741, 744 (6th Cir. 2003)).

Lint has been through several appeals, but to determine the proper state-court opinion to review, this court must "look through" the summary decisions of the Michigan Supreme Court and the Michigan Court of Appeals to the last reasoned state-court opinion discussing the ineffective assistance of counsel claims for failure to investigate, which was issued by the Macomb County Circuit Court in denying Lint's motion for relief from judgment. *See Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991) (describing the "look through" presumption); *Guilmette v. Howes*, 624 F.3d 286, 289 (6th Cir. 2010) ("Brief orders citing Michigan Court Rule 6.508(D) are not explained orders invoking a procedural bar."). Lint argues that this court confined its analysis to state law and did not sufficiently adjudicate his federal claims on the merits to trigger the AEDPA deference. The clear text of the AEDPA applies its deferential standard only when claims were "adjudicated on the merits in State court proceedings." 28 U.S.C. § 2254(d). Therefore, if a state court "did not reach the merits of [a habeas] claim, federal habeas review is not subject to the deferential standard that applies under AEDPA. . . .Instead, the claim is reviewed *de novo.*" *Moritz v. Lafler*, No. 12-1222, 2013 WL 1777127, at \*5 (6th Cir. Apr. 25, 2013) (quoting *Cone v. Bell,* 556 U.S. 449, 472 (2009)).

However, under the so-called *Richter* presumption, "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Richter*, 131 S. Ct. at 784-85. Further, even when the state court decision contains an analysis of some issues, but does not expressly address the federal law claims raised in a subsequent habeas petition, the *Richter* presumption still applies. *Johnson v. Williams*, 133 S. Ct. 1088, 1094 (2013). The Supreme Court has recognized that there exists various reasons that a state court might not expressly discuss a federal claim that it considered on the merits, including when

8

"a line of state precedent is viewed as fully incorporating a related federal constitutional right;" when the state court does not "regard a fleeting reference to a provision of the Federal Constitution or federal precedent as sufficient to raise a separate federal claim;" and when "a state court may simply regard a claim as too insubstantial to merit discussion." *Id*. at 1094-95. However, though the *Richter* presumption is "a strong one," it may be overcome in unusual circumstances, such as when the federal claim was rejected out of "sheer inadvertence." *Id*. at 1096-97.

Though Lint argues that the Michigan state courts did not adjudicate his claims on the merits, the Macomb County Circuit Court expressly characterized its rulings differently. In discussing Lint's claim that his counsel was ineffective for failing to investigate, the court stated that Lint's argument "wholly lacks merit" and "is, at best, specious," and "failed to establish an entitlement to a new trial." [R. 6-16 at 1171, 1173]. Thus, the state court expressly indicated that it was evaluating Lint's claims on the merits.

Further, the court's citation of state law in its analysis sufficiently incorporates the federal standard. *See Johnson*, 133 S. Ct. at 1094. The state circuit court characterized the two-part ineffective assistance of counsel test as follows: "First, the defense counsel must perform at least as well as a lawyer with ordinary training and skill in the criminal law. Second, even though the first test is satisfied, counsel must not make a serious mistake but for which the defendant would have a reasonably likely chance of acquittal." [R. 6-16 at 1170]. The state circuit court also noted that the trial counsel enjoyed the presumption of effective representation, and the burden is on the defendant to make a showing of ineffectiveness. Though the Supreme Court of Michigan has characterized this iteration of the test as more protective of defendants than the *Strickland* standard, in that a defendant need only demonstrate the prejudice prong for relief, it fully incorporates the

9

federal standard.[2] That is to say, if the state court could not find Lint's counsel ineffective under the *Garcia* test, it would by definition be unable to do so under *Strickland*. As the applied state standard "is viewed as fully incorporating a related federal constitutional right," the Macomb County Circuit Court did not need to cite directly to *Strickland* to conduct an adjudication on the merits for the purposes of § 2254(d)(1). *Johnson*, 133 S. Ct. 1094; *see Richter,* 131 S. Ct. at 784. Thus, the state court having considered this claim on the merits, its decision must be afforded AEDPA deference.

When viewed through the deferential lens of the AEDPA, the Macomb County Circuit Court's analysis is not contrary to nor an unreasonable application of the first prong of *Strickland*. In the context of the deficiency component of the *Strickland* analysis, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 690. It is clear from the record that Lint's trial counsel was aware of photographs of the Lint apartment and the police report, but made a strategic choice to argue against their admission, likely because they contained evidence that he calculated as being more harmful than favorable. The trial court's refusal to second guess these decisions in hindsight is in line with *Strickland*.

---

[2] In *People v. Pickens*, the Michigan Supreme Court found that the test applied by the circuit court here provided for more protection for defendants than *Strickland,* allowing a finding of ineffective assistance of counsel even if counsel's performance did not prejudice the defendant. 521 N.W.2d 797, 809-10 (Mich. 1994). In *Pickens*, the Michigan Supreme Court held that, as was already the case with the deficient performance prong, the prejudice prong of the *Garcia* test was to be applied in a manner that is consistent with the federal standard in *Strickland*. *Id*.; *see also People v. Kevorkian*, 639 N.W.2d 291, 324 (Mich. 2001). This court has recognized the ineffective assistance of counsel analysis that is generally applied by the Michigan state courts is now essentially the same as the deficiency and prejudice analysis mandated by *Strickland*. *Ballinger v. Prelesnik*, 709 F.3d 558, 561 (6th Cir. 2013).

10

"[S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland*, 466 U.S. at 690-91. Counsel has a "duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Id*. at 91. An attorney's decision not to investigate must be directly assessed for "reasonableness in all circumstances, applying a heavy measure of deference to counsel's judgment." *Id*. It was reasonable under this standard for the state court to find that Lint's counsel, having already secured two family witnesses to impeach the credibility of Maja Lint, did not perform deficiently when he determined that the testimony of Lint's sister and parents, none of whom was at the apartment at the time of the incident and all of whom would appear obviously biased before the jury, would be insufficiently helpful to merit further investigation or introduction at trial. This is especially true considering that the subject of their alleged testimony would have been cumulative or of little exculpatory value for Lint. Lint's counsel had already cross-examined Maja Lint about her inconsistent statement relative to the window blinds. Also, whether or not Lint's family members could have testified that the phone cord was not cut, does not foreclose the possibility that Lint deceived Maja into believing that it was. Likewise, the fact that phone calls were made from the Lint home does not show that Maja Lint could freely make calls during the time that she was supposedly captured, only that calls were made. The state court's decision that Lint's counsel was not deficient for failing to introduce or investigate this testimonial and documentary evidence is not objectively unreasonable.

Though Lint's failure to carry his burden on the first component of the *Strickland* test forecloses habeas relief on this ground, the state court's decision that Lint was in any event not prejudiced by his counsel's failure to investigate the previously mentioned evidence was not

11

unreasonable. As has been stated, the evidence cited by Lint was largely cumulative, irrelevant, or even harmful to his case. Even if his parents and sister would have testified that his phone line was not cut and that there were blinds on the windows, and even if Lint had introduced into evidence his phone records, pictures of his home, and the police report, the chance that a jury would reach a different outcome, especially in light of the overwhelming evidence against him, is not "substantial," which is required for Lint to meet his burden under the second component of *Strickland*. *Richter*, 131 S. Ct. at 792.

**2**

Lint's second claim is that his counsel was ineffective under the *Strickland* standard for failing to object to jury instructions for kidnapping by secret confinement. Specifically, Lint claims that the jury was instructed on secret confinement even though that was "a theory of criminal conduct that was absent from Mr. Lint's criminal information and complaint." As a result of his counsel's failure, Lint argues that he was denied his Sixth Amendment right to be informed of the nature and cause of the accusation against him.

Unlike the previous claim, this ground for ineffective assistance of counsel was raised in the direct appeal, but not the motion for post-conviction relief. The last reasoned state-court opinion in which this claim was discussed is the decision of the Michigan Court of Appeals, which considered Lint's direct appeal of his conviction. *See Ylst,* 501 U.S. at 804; *Guilmette,* 624 F.3d at 291-92. Contrary to Lint's contention, the Michigan Court of Appeals considered this claim on the merits. The court not only expressly stated that Lint's argument had no merit, but also applied a state law standard for ineffective assistance of counsel that essentially mirrors the one set forth in

*Strickland*.[3] *See Johnson*, 133 S. Ct. at 1094. Thus, AEDPA deference applies and the relevant inquiry is whether the district court correctly determined that the Michigan state court's decision was not contrary to or an unreasonable application of *Strickland*.

The felony information charges Lint with kidnapping, stating that he "did willfully, maliciously and without lawful authority forcibly confine Maja Lint within her will; contrary to MCL 750.349." At the time that Lint was charged, the Michigan kidnapping statute, MCL 750.430, stated as follows:

> Section 349. Confining person against will, etc.—Any person who willfully, maliciously and without lawful authority shall forcibly or secretly confine or imprison any other person within this state against his will, or shall forcibly carry or send such person out of this state, or shall forcibly seize or confine, or shall inveigle or kidnap any other person with intent to extort money or other valuable thing thereby or with intent either to cause such person to be secretly confined or imprisoned in this state against his will, or in any way held to service against his will, shall be guilty of a felony, punishable by imprisonment in the state prison for life or for any term of years.

MICH. COMP. LAWS § 750.349. At the conclusion of Lint's trial, pursuant to CJI 12d 19.4, Michigan's standard jury instruction for "Kidnapping; Secret Confinement of a Victim," the trial judge instructed the jury to find Lint guilty if it found the State had sufficiently proven the following elements: (1) the defendant forcibly confined the victim against her will; (2) the defendant was without legal authority to confine the victim; (3) the defendant kept the victim's location a secret; (4) the defendant intended that the victim's confinement be a secret; and (5) the defendant acted willfully and maliciously.

---

[3] The Michigan Court of Appeals directly cited to the previously referenced case of *People v. Pickens*, 521 N.W.2d 797 (Mich. 1994), in which the court articulates the state ineffective assistance of counsel analysis, which sufficiently incorporates the *Strickland* standard. *See Ballinger*, 709 F.3d at 561.

13

The Michigan Court of Appeals expressly found that the jury instructions were sufficient under state law in light of the language of the charging document and the relevant statute. The reasons for this finding are largely immaterial to this proceeding. "[A] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (citing *Estelle v. McGuire,* 502 U.S. 62, 67–68 (1991)); *Mullaney v. Wilbur,* 421 U.S. 684, 691 (1975)). This court has previously stated, "[p]rinciples of comity require federal courts to defer to a state court judgment on the issues of state law." *Israfil v. Russell*, 276 F.3d 768, 771 (2001)(citing *Engle v. Isaac*, 456 U.S. 107, 128-29 (1982)).

Though the reasons that the Michigan Court of Appeals found its jury instruction adequately reflected the state law and corresponding state charges might be immaterial, the fact that it made such a finding is relevant to this analysis. The Michigan Court of Appeals reviewed the secret confinement jury instruction and found that in light of the state statute and interpreting state case law, the instruction approximately reflected the crime charged. Specifically, the Michigan Court of Appeals found that "[t]he instructions fairly presented the issues and protected Lint's rights." *People v. Lint*, No. 256743, 2005 WL 3179637 at *9 (Mich. Ct. App. Nov. 29, 2005). Additionally, citing its precedent, the court expressly held that, "the instructions properly included the elements of the crime of kidnapping and did not exclude consideration of the material issues, defenses, or theories for which there was supporting evidence." *Id*. at *10. If this was the understood state of the law on kidnapping in Michigan, as represented by the Michigan Court of Appeals, it can hardly be said that a defense counsel's failure to object to the jury instructions is unreasonable. As the state court concluded, Lint's counsel was "not required to advocate a meritless position." *Id*.

14

Further, it is not as though the State kept its theory of secret confinement hidden in the weeds, waiting to spring it on Lint at the charge conference, after which he would have had no opportunity to attack that accusation. The Michigan Court of Appeals found that the prosecutor had made his theory clear at the preliminary hearing, the opening argument, and the closing argument. Included in this theory was that Lint used multiple methods to restrain Maja, that he tied her up in the apartment and forbade her from leaving, and that he kept her location and confinement a secret. When Lint and his counsel had continued through the course of an entire trial in which the prosecutor had made his theory clear, it is difficult to conceive that the trial court would have been receptive to an objection that Lint was without notice that this instruction would be proposed by the prosecution. As stated by the Michigan Court of Appeals, "the parties knew at all times that the kidnapping charge was based on a theory of secret confinement." *Id.* Therefore, the decision of the Michigan Court of Appeals that Lint's counsel was not ineffective for failing to object on Sixth Amendment grounds to the secret kidnapping jury instruction is not contrary to or an unreasonable application of the clearly established federal law set forth in *Strickland*.

**3**

Lint's third claim is that his counsel was ineffective under the *Strickland* standard for failing to communicate a plea offer from the prosecutor. Specifically, Lint submits affidavits from his mother and father, each of which states that the defense attorney, James Hoare, told them that he had rejected a plea offer without communicating it to Lint. Lint also submits an affidavit in which he alleges that after trial, Hoare told him about a plea offer which he unilaterally rejected without first communicating with Lint. Though the affidavits of his parents do not reveal the terms of the plea deal, Lint's affidavit identifies the rejected plea offer to have been for a sentence of 48-96 months.

15

This is in contrast to Lint's actual sentence, which was for 210 months and 40-60 months to be served concurrently.

The last reasoned analysis of this claim was in the opinion of the Macomb County Circuit Court, which denied Lint's motion for relief from judgment. *See Ylst,* 501 U.S. at 804; *Guilmette* 624 F.3d at 291-92. As previously discussed, the court's decision expressly stated that it was undertaking review on the merits, and the state standard for ineffective assistance of counsel that it applied sufficiently encompassed *Strickland*. However, in the context of this claim, Lint also argues that the opinion of the Macomb County Circuit Court cannot be considered a decision on the merits for AEDPA purposes because the state court failed to fully develop the factual record by refusing to grant Lint the evidentiary hearing that he requested. For this proposition, Lint cites this court's decision in *Brown v. Smith*, 551 F.3d 424 (6th Cir. 2008). In *Brown*, this court stated "whenever new, substantial evidence supporting a habeas claim comes to light during the proceedings in federal district court," AEDPA deference is not appropriate because, "the state courts could not have made a proper determination on the merits." *Id*. at 429 (internal citation and quotation marks omitted). As a result, this court concluded, "the absence of the counseling records before the Michigan Court of Appeals (through no fault of Brown's), combined with that court's explicit statement that its review was 'limited to mistakes apparent on the record,' means that there is no relevant state court adjudication to which this court can defer." *Id*. at 429-30. As a result, this court refused to apply AEDPA deference, and instead reviewed the claims *de novo*.

Several factors render *Brown* inapplicable here. First, as this court has recently recognized, intervening decisions of the United States Supreme Court have called into question the continued validity of *Brown*. In *Ballinger*, this court stated as follows:

16

> In *Brown,* we concluded that the state court had not issued a decision on the merits because highly relevant documents were absent from the trial court record. To the extent that *Brown* is inconsistent with *Harrington*'s definition of "on the merits," however, it is no longer the law. It is now clear that a state-court adjudication, even when unaccompanied by an explanation, is presumed to be on the merits and is to be reviewed through the deferential lens of § 2254(d).

709 F.3d at 561-62. (internal citations omitted).

Further, unlike *Brown*, Lint did develop a record that the state courts actually reviewed. On his collateral appeal to the Macomb County Circuit Court, Lint submitted the evidence that he had to support his claim that his counsel had failed to communicate a plea offer to him. This included his own affidavit, as well as affidavits from his mother and father. He seems to have proposed no additional evidence that he might introduce or develop at a hearing, nor does it appear from his briefs that he could have produced such evidence. The state court expressly considered the affidavits Lint submitted relative to this claim and found that no evidentiary hearing was necessary and that Lint had not successfully shown a plea offer had been extended that was not communicated to him. Therefore, even if the *Richter* presumption had not likely rendered inapplicable the rule in *Brown*, the nature of the evidentiary record distinguishes Lint's case. The absence of an evidentiary hearing at the state court level does not change the fact that the Macomb County Circuit Court considered this claim on the merits, and that its decision should be afforded the required AEDPA deference.

In considering the substance of Lint's argument, "the two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel." *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). A petitioner satisfies the deficient performance component if he can prove "that the government extended a plea offer that [his counsel] failed to communicate to him." *Guerrero v. United States*, 383 F.3d 409, 416 (6th Cir. 2004). To satisfy the prejudice component,

17

"defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel." *Missouri v. Frye*, 132 S. Ct. 1399, 1409 (2012).

The Macomb County Circuit Court recognized that the failure to advise a client of a plea offer was an appropriate ground for finding ineffective assistance of counsel. In addition, though brief, the Macomb County Circuit Court's analysis of what constitutes deficient performance of counsel is essentially the same as the standard employed by this court in *Guerrero*. Specifically, the circuit court found that, in order to receive relief from the prior judgment, the petitioner must prove, "that a plea offer was made and his counsel failed to communicate it to him." [R. 6-16 at 1173].

Lint is critical of the state court's focus on state evidence law, but it is a reasonable inference that the Macomb County Circuit Court is merely using evidence law as a mechanism to evaluate whether petitioner has carried his burden in proving that a plea offer was made and then not communicated to Lint. The evidence that Lint had placed into the record included three affidavits. The first two were from his parents, each of whom indicated that the defense attorney had stated during trial that he had received a plea offer from the prosecutor. Neither of these claimed to know the length of the sentence range contained in the offer because, in the words of Lint's mother, "Attorney Hoare said that we did not want to hear what the offer was." Lint also submits his own affidavit, in which he claims that he called his attorney after the conclusion of trial and only then did Hoare tell him that he had rejected a plea offer without first consulting with Lint. Lint claims his attorney said that the plea offer was a sentencing minimum of 48-96 months. The Macomb County Circuit Court classified this evidence as "rank hearsay" because "each affiant is relying on what trial defense counsel allegedly said the prosecutor stated." [R. 6-16 at 1173]. The state circuit

18

court found that the evidence that a plea offer was extended and not communicated to Lint was unpersuasive and insufficient to merit a new trial on the basis of ineffective assistance of counsel.

This is not an unreasonable conclusion. The only evidence that Lint has to support this claim is his own statement and the statement of his parents, containing information that they received second hand. The power of this evidence is not only diluted by the fact that it is hearsay, but also because of the obvious bias of his parents' affidavit and the self-serving nature of his own. As discussed, Lint has proposed no additional evidence that he might introduce or develop at a hearing, nor does it appear from his briefs that he could have produced such evidence.[4] Moreover, as noted by the State, the wide variation between the alleged plea offer and the amount Lint actually received upon conviction, even having been acquitted on two counts, somewhat reduces the persuasiveness of the evidence Lint has presented.

In short, the Macomb County Circuit Court correctly recognized that in order to maintain a claim for ineffective assistance of counsel on the basis of a plea agreement, Lint must first demonstrate that a plea offer was made and that his counsel failed to communicate it to him. The court's decision that he failed in making that showing was not contrary to or an unreasonable application of clearly established federal law so as to warrant habeas relief under the deferential standard of the AEDPA.

---

[4] Importantly, Lint did not submit an affidavit of his defense counsel.

**4**

Finally, Lint argues that the federal district court abused its discretion by failing to grant an evidentiary hearing to allow him to further develop his claim for ineffective assistance of counsel. "This court reviews a district court's decision whether to hold an evidentiary hearing for an abuse of discretion." *Hodges v. Colson*, 711 F.3d 589, 613 (6th Cir. 2013) (quoting *Vroman v. Brigano,* 346 F.3d 598, 606 (6th Cir. 2003)).

The Supreme Court has recently limited the circumstances under which federal district courts may hold an evidentiary hearing in the context of 28 U.S.C. § 2254. In *Cullen v. Pinholster*, the Supreme Court held that, based on the "backward-looking language" of the statute, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." 131 S. Ct. at 1398-99; *see also Ballinger*, 709 F.3d at 561 ("[D]istrict courts are precluded from conducting evidentiary hearings to supplement existing state court records when a state court has issued a decision on the merits with respect to the claim at issue.").

As has already been discussed in detail, the state courts of Michigan adjudicated each of Lint's claims on the merits. Pursuant to § 2254(d)(1) and the Supreme Court's decision in *Pinholster*, the district court's review was limited to the record that was before the state court. Therefore, "[i]t was a reasonable exercise of the district court's discretion to deny an evidentiary hearing on the claim, because any evidence introduced would be 'irrelevant' and 'have no bearing on § 2254(d)(1) review' in any event." *Hodges,* 711 F.3d at 613 (quoting *Pinholster,* 131 S. Ct. at 1400).

## III

Accordingly, for the reasons stated above, the district court's decision denying Lint's petition for writ of habeas corpus is AFFIRMED.