**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 17, 2014**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

LEAH BENJAMIN,

      Petitioner - Appellant,

v.

PHIL MEYER, Warden, Wyoming
Department of Corrections Women's
Center; ROBERT LAMPERT, Director,
Wyoming Department of Corrections;
PETER K. MICHAEL, Wyoming
Attorney General,

      Respondents - Appellees.

No. 14-8010
(D.C. No. 2:13-CV-00114-SWS)
(D. Wyo.)

---

**ORDER DENYING CERTIFICATE OF APPEALABILITY**[*]

---

Before **HARTZ**, **McKAY**, and **MATHESON**, Circuit Judges.

---

Leah Benjamin was convicted of second degree murder in Wyoming state court

for killing her abusive husband, Donald Benjamin. She seeks a certificate of

appealability ("COA") to appeal the district court's order denying her petition for a writ

of habeas corpus under 28 U.S.C. § 2254. *See* 28 U.S.C. § 2253(c)(1) (requiring a COA

---

     *This order is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

to appeal the denial of a habeas petition).  Exercising jurisdiction under 28 U.S.C. § 1291, we deny a COA and dismiss this matter.

## I.  BACKGROUND

### A. *Factual Background*

Mr. and Ms. Benjamin married in 1999.  They separated in 2005 and later attempted to reconcile, but Mr. Benjamin filed for divorce in February 2009.  On May 3, 2009, Ms. Benjamin shot and killed Mr. Benjamin at her home in Buffalo, Wyoming. She had called and texted him throughout the day to tell him their daughter was waiting to spend time with him, even though the daughter was not at home.  When Mr. Benjamin called to say he was on his way, Ms. Benjamin told him not to come because their daughter did not want to see him.  Mr. Benjamin came anyway.  After they argued for about an hour, Ms. Benjamin shot her husband.  Her 18-year-old son found her with Mr. Benjamin's body.  She convinced him to leave town with his sister.  Ms. Benjamin cleaned up the scene, attended a movie, and eventually turned herself in to the police early the next morning—16 hours after the shooting.

### B. *Procedural Background*

#### 1.  State Court Trial

Wyoming charged Ms. Benjamin with first-degree murder.  During jury selection, a potential juror, Karen Blaney, acknowledged she was married to Dr. Timothy Blaney, a prosecution expert witness, and she had taught Mr. Benjamin's daughter in school.  When asked whether she could be impartial if her husband testified, she said she often disagrees

with her husband and is an independent thinker. Neither the Government nor Ms. Benjamin objected to Ms. Blaney's serving on the jury. At the end of jury selection, the trial court asked counsel about Ms. Blaney's relationship to Dr. Blaney. Ms. Benjamin's counsel confirmed his decision to not object, explaining he "kind of like[d] her." Appx. at 195.[1] Ms. Blaney was empaneled on the jury.

At trial, Ms. Benjamin testified she shot her husband in self-defense. She stated he slammed her into a shower door, shattering the glass. She ran out of the bathroom and grabbed a gun. She remembered shooting him once when he lunged for the gun. The defense's expert witness testified Ms. Benjamin suffered from post-traumatic stress disorder, particularly battered woman syndrome ("BWS"). Dr. Blaney did not testify. Several witnesses testified about Mr. and Ms. Benjamin's abusive relationship.

Forensic evidence disputed Ms. Benjamin's account of the events. A bullet had shattered the shower door, Mr. Benjamin had no gun powder on his hands consistent with reaching for the gun, and he sustained three gunshot wounds.

During a jury instruction conference near the end of trial, Ms. Benjamin's counsel asked the court to remove Ms. Blaney from the jury for bias. Although Dr. Blaney had not testified, he had communicated with the prosecution in open court during trial and had appeared to be helping them. According to Ms. Benjamin's counsel, during the Government's cross-examination of the defense's BWS expert, Dr. Blaney "rushed up to

---

[1] This conversation was off the record and not transcribed, but the trial court recounted it when Ms. Benjamin later asked the trial court to remove Ms. Blaney from the jury. *See* Appx. at 194.

the prosecutor's table" in a way that "would have given the jury the impression that he had a passionate view opposite of what was being said . . . ." Appx. at 194. Ms. Benjamin argued Ms. Blaney's spousal relationship with Dr. Blaney made her biased. The trial court determined Ms. Benjamin had waived this objection when she did not object to Ms. Blaney during jury selection and her counsel had said he "kind of like[d] her." Appx. at 194-95. The district court did not hold a hearing, and Ms. Blaney remained on the jury.

After the eight-day trial, the jury acquitted Ms. Benjamin of first-degree murder but found her guilty of second-degree murder (a lesser-included offense) for killing her husband. The court sentenced her to 20-30 years in prison.

## 2. State Court Direct Appeal

In her appeal to the Wyoming Supreme Court, Ms. Benjamin argued the trial court erred in (1) refusing to dismiss Ms. Blaney; (2) rejecting Ms. Benjamin's proposed jury instructions; and (3) denying Ms. Benjamin's post-trial motion for acquittal. She also argued (4) the State engaged in prosecutorial misconduct.[2] The Wyoming Supreme Court affirmed her conviction. *See Benjamin v. State*, 264 P.3d 1 (Wyo. 2011).

## 3. State Court Post-Conviction Proceedings

Ms. Benjamin petitioned for post-conviction relief in the state district court. She argued (1) prosecutorial misconduct, (2) ineffective assistance of trial counsel, and

---

[2] She did not argue ineffective assistance on direct appeal, as Wyoming state law generally requires. *See Schreibvogel v. State*, 269 P.3d 1098, 1102 (Wyo. 2012).

(3) ineffective assistance of appellate counsel in failing to bring an ineffective of trial

counsel claim on direct appeal.  The state district court denied relief, and the Wyoming

Supreme Court summarily affirmed.

4.  **Federal Habeas Proceedings**

Ms. Benjamin then filed a federal habeas petition with the United States District

Court for the District of Wyoming under 28 U.S.C. § 2254.  She argued the Wyoming

decisions were contrary to or unreasonable applications of clearly established U.S.

Supreme Court law on the following issues:  (1) the trial court's failure to remove Juror

Blaney; (2) prosecutorial misconduct; and (3) ineffective assistance of appellate counsel

for failing to raise on direct appeal that trial counsel was ineffective for (a) not objecting

to Juror Blaney and (b) deficiently presenting Ms. Benjamin's BWS defense.[3]  The

district court denied habeas relief and a COA.

* * * *

We present additional procedural history in our discussion of the two issues for

which Ms. Benjamin seeks COA.

## II.  **DISCUSSION**

Ms. Benjamin seeks a COA and relief on the merits on the following Sixth

Amendment issues:  (A) the trial court erred in refusing to remove Juror Blaney and in

---

[3] Although Ms. Benjamin presented her claims in her habeas petition as ineffective assistance of trial counsel claims, she acknowledged and argued in the petition that these claims are not procedurally barred because *appellate counsel* was ineffective.  Appx. at 77-79.

declining to hold a hearing regarding her bias; and (B) trial counsel rendered ineffective assistance in (1) not striking Juror Blaney and (2) inadequately presenting Ms. Benjamin's BWS defense.

A COA is a jurisdictional prerequisite to appeal a district court's denial of a § 2254 habeas petition. *See Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003). When a state court has decided the petitioner's claim on the merits, we "look to the District Court's application of [the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")] to petitioner's constitutional claims and ask whether that resolution was debatable among jurists of reason." *Miller–El*, 537 U.S. at 366. AEDPA provides that federal courts cannot grant habeas relief unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," *id.* § 2254(d)(2). "[S]tate-court findings of fact are to be accorded the presumption of correctness." *See Wainwright v. Witt*, 469 U.S. 412, 428 (1985). This presumption may be rebutted only "by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

## A. *Juror Blaney*

Ms. Benjamin argues the trial court's refusal to remove Juror Blaney was contrary to or an unreasonable application of federal law.

1. **Additional Procedural History**

After completion of the prosecution's and defendant's cases, Ms. Benjamin moved to remove Ms. Blaney from the jury. The trial court refused because Ms. Benjamin had waived her right to object during jury selection. The trial court reminded counsel that it raised the issue at the end of jury selection, and Ms. Benjamin's counsel stated he "kind of like[d] her." Appx. at 194. The trial court mentioned it would "probably have granted" a motion to strike for cause during jury selection if anyone had objected. *Id.* at 195. The court "would have been more concerned had [D]r. Blaney actually testified," but determined there "is not a statutory or defined issue for cause [because Ms. Blaney] specifically articulated [Dr. Blaney's testifying] would not be a problem for her." *Id.* at 194-95. Ms. Benjamin's counsel did not request a hearing to determine whether Ms. Blaney had actual bias.

On direct appeal, the Wyoming Supreme Court affirmed, agreeing that Ms. Benjamin waived her right to object to Ms. Blaney's service on the jury. As to whether changed circumstances—Dr. Blaney's not testifying but instead "react[ing] visibly during the cross examination" of the defense's expert witness—were enough to overcome Ms. Benjamin's waiver, the court held the trial court reasonably concluded the circumstances had not materially changed because "Dr. Blaney's actions during trial had less negative impact than if he had testified to his disagreement with the defense expert . . . ."

*Benjamin*, 264 P.3d at 10. The trial court therefore did not abuse its discretion in denying Ms. Benjamin's request to remove Ms. Blaney from the jury.[4]

In her federal habeas petition, Ms. Benjamin argued Ms. Blaney's presence on the jury violated her Sixth Amendment right to an impartial jury. She contended (1) Ms. Blaney was impliedly biased because of her relationship with Dr. Blaney, and (2) the trial court failed sua sponte to grant a hearing on actual bias. The federal district court determined Ms. Benjamin failed to show the Wyoming Supreme Court's decision on this issue violated clearly established federal law or was based on an unreasonable determination of fact.

## 2. **Analysis**

We deny COA because reasonable jurists would not debate the district court's application of AEDPA in this case.

First, Ms. Benjamin cites no clearly established Supreme Court law contrary to the Wyoming Supreme Court's conclusion that she waived any implicit bias objection. Nor does she cite any clearly established Supreme Court law that Ms. Blaney was implicitly biased.

Second, Ms. Benjamin again cites no clearly established law supporting her position that the trial "court had an independent duty to take corrective action to preserve Ms. Benjamin's rights to due process and a fair trial" by sua sponte holding a hearing on

---

[4] Ms. Benjamin did not raise this issue on state post-conviction review.

Ms. Blaney's actual bias. Aplt. Br. at 27-28.[5]  Instead, Ms. Benjamin relies on cases that concerned previously undisclosed juror information regarding potential relationship bias. *See Smith v. Phillips*, 455 U.S. 209, 215 (1982) (holding a hearing was warranted when information came to light that a juror applied for a job with the prosecutor's office after the defendant had been convicted); *Remmer v. United States*, 347 U.S. 227, 229 (1954) (holding that information of possible juror bribery coming to light after the jury returned its verdict warranted a hearing).  In Ms. Benjamin's case, however, Ms. Blaney's spousal relationship with Dr. Blaney was disclosed early in the jury selection process.

Third, Ms. Benjamin argues Ms. Blaney's answers to questions about actual bias could have changed because Dr. Blaney's role as a potential prosecution testifying expert changed to his actual service as a non-testifying in-court expert consultant.  The trial court determined the circumstances had not changed enough to affect Ms. Blaney's impartiality.  The Wyoming Supreme Court agreed.  "[S]tate-court findings of fact are to be accorded the presumption of correctness." *Wainwright*, 469 U.S. at 428; *see Patton v. Yount*, 467 U.S. 1025, 1038 (1984) (holding that a trial judge's finding that a particular venire member was not biased and therefore was properly seated was a finding of fact subject to a presumption of correctness).  Ms. Benjamin has failed to rebut this factual

---

[5] She also argues the Wyoming Supreme Court did not address this issue.  To the extent she contends her claim was not adjudicated on the merits, her argument fails.  Although the Wyoming Supreme Court did not explicitly address whether the trial court should have sua sponte held a hearing on actual bias, "[w]hen a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits . . . ." *Johnson v. Williams*, 133 S. Ct. 1088, 1096 (2013), *reh'g denied*, 133 S. Ct. 1858 (2013).

determination's "presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

Fourth, even if Ms. Benjamin had set forth clearly established Supreme Court law regarding a right to an impartial jury, she has not shown how the Wyoming Supreme Court's decision was an unreasonable application of the law.

## B. *Ineffective Assistance of Trial Counsel*

Ms. Benjamin argues her trial counsel was ineffective for failing to object to Juror Blaney and for deficiently presenting a BWS defense. Ms. Benjamin did not raise this issue on direct appeal. *See Benjamin*, 264 P.3d at 4-5. Wyoming law requires defendants to bring ineffective assistance of trial counsel claims on direct appeal. *See* Wyo. Stat. Ann § 7-14-103(a)(i); *Harlow v. State*, 105 P.3d 1049, 1068 (Wyo. 2005).[6] On post-conviction review, a petitioner can show appellate counsel was ineffective in failing to raise a claim of ineffective assistance of trial counsel. *See* Wyo. Stat. Ann § 7-14-103(b)(ii). Such a claim functions as a "portal" for review of an otherwise-barred claim of ineffective assistance at trial. *Schreibvogel v. State*, 269 P.3d 1098, 1102 (Wyo. 2012).

---

[6] The Wyoming Supreme Court has recognized an exception to this requirement when counsel at trial and on direct appeal are the same. *See Keats v. State*, 115 P.3d 1110, 1117 (Wyo. 2005) ("[I]f the same attorney is used both at trial and on appeal then there is not a 'waiver' of a claim of ineffective assistance of trial counsel because there has not truly been an opportunity to previously present those claims."). This exception does not apply here because trial counsel did not represent Ms. Benjamin on direct appeal.

In her state and federal collateral relief proceedings, Ms. Benjamin attempted to use this "portal" exception. She argued in both proceedings that her appellate counsel was ineffective for failing to argue her trial counsel was ineffective. The state court determined she could not establish ineffective assistance of appellate counsel because she could not establish ineffective assistance of trial counsel. The federal district court determined the state court's decision withstood AEDPA deference because trial counsel's performance was not deficient.

In her request for COA, Ms. Benjamin argues ineffective assistance of trial counsel but says nothing about ineffective assistance of appellate counsel. The district court did not address a freestanding ineffective assistance of trial counsel claim, and we do not address issues that were not addressed by the district court. *See Hammon v. Ward*, 466 F.3d 919, 926 n.8 (10th Cir. 2006) ("Petitioner did not raise this claim in his § 2254 habeas petition, and we therefore will not consider it on appeal.").

Even if we were to construe her claim as ineffective assistance of appellate counsel, Ms. Benjamin fails to argue why her appellate counsel was ineffective. "It is well-settled that arguments inadequately briefed in the opening brief are waived." *United States v. Cooper*, 654 F.3d 1104, 1128 (10th Cir. 2011) (quotations omitted); *see Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007) ("[W]e routinely have declined to consider arguments that are not raised, or are inadequately presented, in an appellant's opening brief."). Ms. Benjamin has not raised or adequately presented her ineffective assistance of appellant counsel claim, and we decline to consider it.

## III.  **CONCLUSION**

For the foregoing reasons, we deny Ms. Benjamin's petition for a COA and dismiss this matter.

ENTERED FOR THE COURT


Scott M. Matheson, Jr.
Circuit Judge