In the

# United States Court of Appeals

## For the Seventh Circuit

No. 15-1976

KENDRICK LEE,

*Petitioner-Appellant,*

*v.*

LISA AVILA,

*Respondent-Appellee.*

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 14-CV-373-JPS — **J.P. Stadtmueller**, *Judge.*

ARGUED SEPTEMBER 14, 2016 — DECIDED SEPTEMBER 13, 2017

Before POSNER,* EASTERBROOK, and SYKES, *Circuit Judges.*

SYKES, *Circuit Judge.* Kendrick Lee, a Wisconsin prisoner, applied for a writ of habeas corpus under 28 U.S.C. § 2254 alleging that his trial counsel was constitutionally ineffective for failing to preserve objections, adequately cross-examine

---

* Circuit Judge Posner retired on September 2, 2017, and did not participate in the decision of this case, which is being resolved by a quorum of the panel under 28 U.S.C. § 46(d).

witnesses, and develop various factual points at his trial on drug charges. Applying the *Strickland* standard, the Wisconsin Court of Appeals rejected Lee's claim for lack of prejudice. In doing so the state court explicitly addressed all but one of Lee's specific complaints about his trial counsel's performance.

When a state court rejects a prisoner's federal claim without discussion, a federal habeas court must presume that the court adjudicated it on the merits unless some state-law procedural principle indicates otherwise. *Harrington v. Richter*, 562 U.S. 86, 98 (2011). The *Richter* presumption applies when the state court's decision expressly addresses some but not all of a prisoner's claims. *Johnson v. Williams*, 133 S. Ct. 1088, 1094 (2013). Lee has not rebutted the presumption, so the state court's *entire* decision is subject to deferential review under § 2254(d). The district court denied relief, holding that the state appellate court reasonably applied *Strickland*. We agree and affirm.

## I. Background

Milwaukee police received a confidential tip that a residence located at 3748 North 17th Street on the city's north side was being used as a drug house. Officers secured a no-knock warrant to search the residence. When they entered the home, they immediately came upon Lee, who was in the living room next to a coffee table laden with the tools of the drug trade: a digital scale, a razor blade, a latex glove, a box of sandwich baggies, a cell phone, and $157 in cash. An open pair of scissors was on the floor next to the coffee table. A corner-cut plastic baggie containing 5.7 grams of cocaine lay on the table.

Officers searched Lee and found $582 in cash and the keys to the house in his pocket. At trial Officer Brian Burch testified that the keys were hooked on a single master key ring along with Lee's personal house keys. Officers recovered two larger bags of cocaine from the basement. In the kitchen they found a loaded handgun and a box of latex gloves on top of a pantry.

Lee was charged with three state crimes: keeping a drug house, possession of cocaine with intent to deliver, and possession of a firearm by a felon. His defense at trial was that he was just an innocent bystander. He testified that the only reason he was at the house was to help his brother Tommie move some of his belongings into the basement for storage. Tommie testified that he had been evicted from his nearby home on the morning of the search and did not have the time or space to move everything into his new house located just a few blocks away. He further testified that a friend known to him only as "Rowe" gave him permission to store some of his things in the basement of the drug house, and he enlisted Kendrick and their brother Jimmie to help him move the heavier items. The three Lee brothers gave differing accounts of the move, but altogether they testified that they moved many large items into the basement of the drug house that morning, including box springs, beds, dressers, a glass table, a recliner, end tables, and some boxes of belongings. This testimony was directly contradicted by Officer Mark Harms, who told the jury that he was in the basement during the execution of the warrant and did not see any of these items.

Lee also offered an explanation for why he just happened to be standing right next to the table with the bag of cocaine

and the drug paraphernalia when the officers entered and why he had the keys to the drug house in his pocket. He testified that when he and his brothers finished moving the furniture and other items into the basement, Tommie gave him the keys so he could reenter the house to use the bathroom located on the main floor. Lee explained that he put the keys in his pocket only temporarily while using the bathroom. As he was washing his hands, he heard a loud crashing noise coming from the living room as the police entered the house. At that point he entered the living room and encountered the officers there.

Tommie took responsibility for the handgun found in the kitchen. He testified that the gun was his and he bought it off the streets. The prosecutor tried to poke holes in this testimony on cross-examination. The prosecutor first established that Tommie had a cousin named Donald McCaleb, and then asked him if he would be "surprise[d] … to know that Donald McCaleb is the registered owner of that gun?" Tommie responded, "Yes, it would" surprise him to learn that. The prosecutor returned to this line of questions during closing argument, calling Tommie's response "interesting."

The prosecutor impeached the Lee brothers with their extensive criminal records and also drew out inconsistencies in their accounts of what happened on the day of the search. To cast further doubt on their moving-day story, during Tommie's cross-examination the prosecutor implied that the eviction could not have occurred until six weeks after the date of the search. That was incorrect; the prosecutor apparently misunderstood the civil process for an eviction. Lee's counsel did not object.

The jury returned a guilty verdict on each of the two drug crimes but found Lee not guilty on the firearm charge. Lee moved for postconviction relief claiming ineffective assistance of counsel. His motion raised many complaints about his trial lawyer's performance. Four are relevant here.

First, Lee claimed that his attorney failed to develop an adequate record to support his moving-day defense. Specifically, Lee pointed to the failure to obtain documents from the sheriff's office that would have confirmed that Tommie was evicted on the morning in question. In addition, Lee argued that his attorney should have called Tommie's wife, Jaclyn, as a witness. Jaclyn was present during the eviction, and unlike her husband, she has no criminal record.

Second, Lee claimed that his attorney should have been more aggressive in her cross-examination of Officer Burch regarding the keys to the drug house. Lee argued that the officer's testimony was weak because it was based solely on his memory (rather than a police report) and was not corroborated by any other officer. Moreover, the keys were not included in the inventory log of Lee's personal possessions when he was booked into the jail.

Third, Lee claimed that his attorney should have developed a better record disassociating him from the drug house. He argued that counsel could have called the landlady as a witness or introduced a copy of the lease to show that he was not a tenant. The lease identifies the tenants as Ramon Lavon Towns and Israel Lee. Israel is Lee's cousin. Ramon is Tommie's friend "Rowe." Or so Lee contended.

Finally, Lee claimed that his attorney should have objected to several aspects of the prosecutor's cross-examination of

defense witnesses and remarks during closing argument. Specifically, Lee pointed to his counsel's failure to correct the prosecutor's inadvertent mischaracterization of eviction law during Tommie's cross-examination. In addition, counsel did not object when the prosecutor implied that the gun Tommie claimed to have bought off the streets was actually registered to his cousin. When the prosecutor mentioned this line of questions in closing argument, Lee's counsel likewise did not object. Finally, the prosecutor tried to impeach Jimmie's testimony with a prior inconsistent statement in which he supposedly said that two other men joined the Lee brothers to help with Tommie's move. Jimmie denied having said that, but the prosecutor never followed up by introducing the prior statement. Nevertheless, when the prosecutor referred to the inconsistent statement during closing argument, Lee's attorney did not object.

The state trial judge analyzed each of Lee's claims under the *Strickland* standard and denied relief. Regarding the first three sets of claims, the judge concluded that even if trial counsel's performance was deficient, Lee suffered no prejudice because additional evidence or cross-examination on these subjects "wouldn't have made a difference" given the weakness of Lee's defense and the strength of the state's evidence. Regarding the fourth set of claims, the judge concluded that Lee's counsel made a reasonable choice to let the prosecutor's cross-examination of Tommie and Jimmie go without objection. The judge also observed that it's not uncommon as a matter of trial strategy for attorneys to refrain from objecting during an opponent's closing argument, especially if the opposing lawyer's remarks are not materially damaging. Finally, the judge held that the failure

to object caused no prejudice because Tommie and Jimmie had been discredited in many ways throughout the trial.

The Wisconsin Court of Appeals affirmed the judgment. The appellate court skipped directly to the second step of the *Strickland* framework, holding that even if trial counsel's performance was deficient, Lee failed to establish a reasonable possibility that the outcome of the trial would have been different. The court relied on the overall strength of the state's case but specifically emphasized Officer Harms's testimony that he saw no furniture, box springs, or boxes in the basement of the drug house. This testimony, which was never discredited, fatally undermined Lee's moving-day defense. The Wisconsin Supreme Court denied review.

Lee applied for habeas relief in federal court, reprising his *Strickland* claims. The district judge noted that the state appellate court explicitly addressed all of Lee's arguments *except* his attack on his attorney's failure to lodge objections during the prosecutor's closing argument. Applying the *Richter* presumption, the judge reviewed the court's entire decision under § 2254(d)'s deferential standard of review and concluded that the state court did not unreasonably apply *Strickland*. The judge accordingly denied relief and this appeal followed.

## II. Discussion

"Federal habeas relief from a state-court criminal judgment 'is not easy to come by.'" *Thompkins v. Pfister*, 698 F.3d 976, 983 (7th Cir. 2012) (quoting *Woods v. McBride*, 430 F.3d 813, 816 (7th Cir. 2005)). When a state court has adjudicated a federal claim on the merits, a federal habeas court may not grant relief unless the state court's decision "was contrary to,

or involved an unreasonable application of, clearly estab-
lished Federal law, as determined by the Supreme Court of
the United States," or was based on "an unreasonable de-
termination of the facts in light of the evidence presented in
the State court proceeding." § 2254(d)(1), (d)(2). To prevail
under this standard, the "prisoner must show that the state
court's ruling on the claim being presented in federal court
was so lacking in justification that there was an error well
understood and comprehended in existing law beyond any
possibility for fairminded disagreement." *Ward v. Neal*,
835 F.3d 698, 703 (7th Cir. 2016) (quoting *Richter*, 562 U.S. at
103).

We review de novo a district court's decision denying a
§ 2254 application. *Thompkins*, 698 F.3d at 983. We focus our
attention on the work of the last state court to consider the
merits of the federal claim—here, the Wisconsin Court of
Appeals. *See Gonzales v. Mize*, 565 F.3d 373, 379 (7th Cir.
2010). Lee does not contend that the appellate court's judg-
ment was contrary to federal law. Rather, he argues that the
state court unreasonably applied *Strickland*.

Under the familiar *Strickland* formula, Lee had the bur-
den to show that his defense attorney's performance was
deficient and that the deficient performance prejudiced his
defense. 466 U.S. at 694. Counsel's performance is entitled to
substantial deference: The *Strickland* analysis begins with "a
strong presumption that counsel's conduct falls within the
wide range of reasonable professional assistance" and "an
objective standard of reasonableness" applies. *Id.* at 688–89.
Prejudice means "a reasonable probability that, but for
counsel's unprofessional errors, the result of the proceeding
would have been different." *Id.* at 694. Because the *Strickland*

standard is "highly deferential" and the treatment of state-court judgments under § 2254(d) is "likewise highly deferential," our review is "doubly deferential." *Hinesley v. Knight*, 837 F.3d 721, 732 (7th Cir. 2016) (quotation marks omitted).

The state appellate court resolved Lee's claims on *Strickland*'s second step. The court assumed for the sake of argument that trial counsel's handling of the eviction, the keys, and the lease fell below constitutional requirements in the ways Lee had identified. But the court concluded that a different outcome was not reasonably probable: the state's case was very strong, and the court noted in particular that Lee's moving-day defense was eviscerated by Officer Harms, who testified that he saw no box springs, furniture, or boxes in the basement of the drug house. Because Officer Harms's testimony had not been discredited, the court concluded that a more robust treatment of the eviction, the keys, and the lease would not have changed the outcome. That was a reasonable way of resolving these claims. The state court's no-prejudice determination was well within the bounds of reasonable judicial opinion.

Lee urges us to apply de novo review to his remaining claim regarding counsel's failure to object to aspects of the prosecutor's closing argument. No path to de novo review is available here. The *Richter* presumption applies and Lee has failed to rebut it.

*Richter* holds that "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." 562 U.S. at 99. At issue in *Richter* was a state-court decision summarily reject-

ing a federal claim without an explanation. The Supreme Court has since clarified that the *Richter* presumption applies when a state court explicitly resolves some but not all of a prisoner's federal claims. *Williams*, 133 S. Ct. at 1094 ("[W]e see no reason why the *Richter* presumption should not also apply when a state-court opinion addresses some but not all of a defendant's claims."). We've explained that under *Richter* and *Williams,* the "state courts must be given the benefit of the doubt when their opinions do not cover every topic raised by the *habeas corpus* petitioner." *Brady v. Pfister*, 711 F.3d 818, 826 (7th Cir. 2013).[1]

The *Richter* presumption is "a strong one that may be rebutted only in unusual circumstances." *Williams*, 133 S. Ct. at 1096. Lee has not rebutted the presumption. His argument about counsel's failure to object to the prosecutor's closing was not raised as an independent *Strickland* claim in the state appellate court. Rather, it was embedded in an argument about counsel's failure to correct the prosecutor's mischaracterization of eviction law during Tommie's cross-examination. The point about the improper statements in closing argument was mentioned as part of the factual basis for Lee's broader claim that his counsel was deficient in failing to "limit improper impeachment of defense witnesses."

In *Williams* the Supreme Court observed that "it is by no means uncommon for a state court to fail to address sepa-

---

[1] In support of his argument for de novo review, Lee cites *Harris v. Thompson*, 698 F.3d 609, 623–26 (7th Cir. 2012), but the Supreme Court's later decision in *Williams* has unsettled *Harris* and other circuit precedent on this point, *see, e.g., id.* at 625; *Sussman v. Jenkins*, 642 F.3d 532, 533–34 (7th Cir. 2011) (Ripple, J., in chambers).

rately a federal claim that the court has not simply over-looked." *Id.* Given the organization of Lee's brief, it's safe to conclude that the state appellate court considered Lee's argument about trial counsel's failure to object during the prosecutor's closing but ultimately did not regard it as "sufficient to raise a separate federal claim" requiring additional comment. *Id.* at 1095. Accordingly, we presume the matter was adjudicated on the merits and review it under § 2254(d)'s deferential standard.

When applying § 2254(d) to an argument not explicitly addressed in the state court's opinion, "a habeas court must determine what arguments or theories … could have supported[] the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Richter*, 562 U.S. at 102.

Lee has not given us any good reason to think that counsel's failure to object during closing argument was either deficient or prejudicial, let alone that the state court's implicit contrary conclusion was unreasonable. Indeed, the state trial judge specifically noted that it's not uncommon for lawyers to refrain from objecting during closing argument and to depart from that practice only when confronted with a serious misstep by opposing counsel. The trial judge expressly held that the failure to object during the prosecutor's closing argument did not fall below the constitutional standard. We presume that by affirming the judgment, the appellate court agreed. *See Ylst v. Nunnemaker*, 501 U.S. 792, 805 (1991). On this record that can hardly be characterized as an error, much less an error so well understood as to be

beyond any possibility for fair-minded disagreement. The decision was justified under either step of the *Strickland* formula: There was neither deficient performance nor prejudice.

Because the state court's decision was well within the bounds of reasonable judicial opinion, we AFFIRM the judgment denying habeas relief.