NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0046n.06

No. 21-1405

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

**FILED**
Jan 26, 2022
DEBORAH S. HUNT, Clerk

ABIGAIL SIMON,

      Petitioner-Appellant,

v.

SHAWN BREWER, Warden,

      Respondent-Appellee.

)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN

Before: SILER, KETHLEDGE, and READLER, Circuit Judges.

KETHLEDGE, Circuit Judge. In 2014, a Michigan jury convicted Abigail Simon of having a sexual relationship with a 15-year-old boy. The Michigan Court of Appeals affirmed her convictions and the Michigan Supreme Court denied review. Simon later petitioned for federal habeas relief, arguing that a jury instruction at her trial violated her due-process rights. The district court denied her petition. We affirm.

In February 2013, Abigail Simon, a 33-year-old tutor at Catholic Central High School in Grand Rapids, began a sexual relationship with a 15-year-old sophomore whom she tutored, B.B. The two met several times to have sex, and frequently texted about their feelings for one another and about their desire to engage in more sex. The relationship lasted for several months, until B.B.'s mother found photos on B.B.'s phone of Simon wearing lingerie.

B.B.'s mother called the police, who interviewed Simon, who denied having sex with B.B. The police did not believe her; in August 2013, Simon was arrested and charged with four counts

of criminal sexual conduct, in violation of Mich. Comp. Laws § 750.520(b)(1)(b)(v).  At a hearing to determine probable cause for those offenses, B.B. testified that he had forced Simon to have sex with him.

At Simon's trial, however, B.B. recanted that testimony and said that he had been trying to protect Simon at the hearing.  Instead, at trial, he testified that Simon had engaged in sex with him voluntarily.  Simon, for her part, testified at trial that B.B. had raped her each time.  The State impeached that testimony by presenting scores of text messages between Simon and B.B, many of which were sexual in nature.

At the close of trial, the principal question before the jury was whether Simon had engaged in sex with B.B. voluntarily.  On that point she proposed that the jury be instructed as follows:

> If a sexual act does not occur under the Defendant's control and the Defendant was powerless to prevent its occurrence, she cannot be held criminally liable for the sexual act.

The trial court chose not to use that instruction, and instead instructed the jury as follows:

> To have quote/unquote "voluntarily" engaged in something, the defendant must have made some conscious act. The defendant's act is involuntary only if the act did not occur under the defendant's control, and she was truly powerless to prevent its occurrence.  Now, some examples of involuntary acts that could not be the basis for a crime are spasms, seizures, reflective [sic] actions and movements occurring while the actor is unconscious or asleep. However, if one consciously acts, then that is voluntary for purposes of this element.

The jury convicted Simon on three of the four counts of criminal sexual conduct, for which the trial court sentenced Simon to 8 to 25 years in prison.  She appealed to the Michigan Court of Appeals, which affirmed, holding in a carefully reasoned opinion that the trial court's instruction as to voluntariness was lawful.  The Michigan Supreme Court denied leave to appeal.  Simon filed a federal habeas petition in which she claimed that the instruction quoted above violated her constitutional right to due process.  The district court denied relief.  This appeal followed.

2

As an initial matter, Simon argues that the Michigan Court of Appeals did not adjudicate her due-process claim on the merits, which, if true, would mean that we should consider that claim de novo. But where—as here—a defendant makes a federal claim to a state court and the state court denies relief, we presume "that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary[.]" *Harrington v. Richter*, 562 U.S. 86, 99 (2011). There is no such indication here. Instead, the Michigan Court of Appeals expressly acknowledged Simon's argument that the trial court's instruction "violated her constitutional right to due process and prevented her from presenting her claimed defense." *People v. Simon*, No. 326149, 2016 WL 3365242, at *1 (Mich. Ct. App. June 16, 2016). And the state appellate court then explained in detail why the trial court had committed "no instructional error." *Id.* at *4. That the court cited state law throughout is immaterial: its reasoning was enough to refute both her federal and state-law instructional claims. Hence the state court adjudicated Simon's federal claims on the merits. *See Johnson v. Williams*, 568 U.S. 289, 299 (2013).

Thus, the question here is whether the Michigan Court of Appeals' rejection of Simon's instructional claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103. Moreover, to violate due process, "[e]rror in jury instructions must be so egregious that the render the entire trial fundamentally unfair." *White v. Mitchell*, 431 F.3d 517, 533 (6th Cir. 2005). Thus, Simon must show that every fairminded jurist would conclude that the trial court's instruction rendered her trial fundamentally unfair.

To that end, Simon argues primarily that the trial court defined "involuntary" too narrowly when it instructed the jury that, "if one consciously acts, then that is voluntary for purposes of this element." But we must consider the court's instruction as a whole; and, as the Michigan Court of

3

Appeals pointed out, the instruction also stated more broadly that an act is involuntary "only if the act did not occur under the defendant's control." That definition of involuntariness encompassed Simon's theory that B.B. physically forced her to have sex. And the Michigan Court of Appeals further observed that, though one definition of "conscious" is awareness of one's actions and surroundings, a second definition is "marked by thought, will, design, or perception." *Simon*, 2016 WL 3365242, at *3 (internal quotation marks omitted). And in the context of this trial—where the issue before the jury was obviously whether Simon had been forced against her will to have sex—the latter definition could naturally come to mind.

Simon counters that the examples of involuntariness in the trial court's instruction—"spasms, seizures," and the like—suggested to the jury that involuntary acts were limited to reflexive ones. But the instruction by its terms provided the jury with only "some examples of involuntary acts[,]" not an exhaustive list of them. A fairminded jurist could easily conclude that the trial court's instruction did not render Simon's trial fundamentally unfair.

The district court's judgment is affirmed.